UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAYMOND OLIVER,

    Plaintiff,

                                         Case No. 09-11040

v.                                     Hon. Lawrence P. Zatkoff

NATIONAL LIFE INSURANCE CO.,

    Defendant.
                                          /

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on January 13, 2010

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This case arises out of the alleged non-payment of disability-insurance benefits. Following a scheduling conference, the Court ordered the parties to conduct a 60-day discovery period, limited to the issue of whether Plaintiff's state-law claims are preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* The Court also instructed the parties to brief the issue following the discovery period. The parties have each filed such a brief, and they have also each filed a reply brief to the other party's brief. Although the Court did not specifically request reply briefs, it will consider the arguments presented therein. Thereafter, Plaintiff filed a motion to file a supplemental brief [dkt 11], representing that he had obtained new evidence in support of his position. As Defendant has not responded to Plaintiff's motion, the Court GRANTS Plaintiff's motion [dkt 11], and it will consider Plaintiff's supplement brief.

The Court finds that the facts and legal arguments are adequately presented in the parties'

papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(e)(2), it is hereby ORDERED that the ERISA-preemption issue be resolved on the briefs submitted. For the following reasons, the Court finds that ERISA does not preempt Plaintiff's state-law claims.

## II. BACKGROUND

Plaintiff is a majority owner and former president of Bristol Steel ("Bristol"), located in Burton, Michigan. In 1988, Plaintiff entered into a disability-insurance policy with Defendant. The policy application indicates that Bristol was to pay 100% of the premiums and that all notices were to be sent to Bristol. According to Plaintiff, the policy premiums were to be automatically deducted from Bristol's business account, and Plaintiff would reimburse the company for those sums. This arrangement was designed to ensure that the premiums were always paid in full and so that a payment was not inadvertently missed.

On February 5, 2004, Plaintiff was involved in an automobile accident that caused him injuries such that he could no longer perform his duties at Bristol. As a result, Plaintiff sought benefits pursuant to his policy with Defendant. Defendant allegedly made some initial payments but has now refused to continue disbursing benefits. In response, Plaintiff filed the current lawsuit demanding damages for breach of contract and intentional infliction of emotional distress. Defendant timely removed the case from the Genesee County Circuit Court to this Court based on diversity jurisdiction. *See* 28 U.S.C. § 1332(b). The issue before the Court is whether ERISA preempts Plaintiff's state-law claims—a question important for purposes of discovery.

## III. LEGAL STANDARD

The Sixth Circuit employs a three-step factual inquiry to determine whether a benefit plan

is governed by ERISA:

> First, the court must apply the so-called "safe harbor" regulations established by the Department of Labor to determine whether the program was exempt from ERISA.
>
> Second, the court must look to see if there was a "plan" by inquiring whether "from the surrounding circumstances a reasonable person [could] ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits."
>
> Finally, the court must ask whether the employer "established or maintained" the plan with the intent of providing benefits to its employees.

*Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 434–35 (1996) (citations omitted).

The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding circumstances and facts from the point of view of a reasonable person. *Id*. at 434. Defendant bears the burden of proof in showing that Plaintiff's state-law claims are preempted. *See Great-West Life & Annuity Ins. Co. v. Info. Sys. & Networks Corp.*, 523 F.3d 266, 270 (4th Cir. 2008); *Bank of Louisiana v. Aetna U.S. HeathCare Inc.*, 468 F.3d 237 (5th Cir. 2006).

## IV.  ANALYSIS

Plaintiff maintains that the policy at issue was an individual policy[1], and that the premiums were deducted from Bristol's account for convenience only. Plaintiff further avers that Bristol took none of the steps necessary to comply with ERISA, such as filing required documents, and that Bristol was not named the administrator of the plan. Plaintiff also notes that when some premiums were returned, they were mailed directly to Plaintiff, rather than to Bristol. In his supplemental

---

[1] Defendant notes that a second name, James Kirby, appears on many of the early statements from Defendant to Bristol. Defendant, however, has advanced no argument regarding Kirby's role with Bristol, the details of Kirby's insurance plan or payments, or the legal significance of Kirby's involvement.

3

brief, Plaintiff elaborates that there was not a plan administrator, and he submits that Defendant did not withhold FICA taxes as it would have if this were an employer-sponsored plan.

Defendant contends that the financial arrangement and actions taken by Bristol transformed the policy into one governed by ERISA, albeit perhaps unintentionally. Defendant cites to the payment plan and the administrative functions performed by Bristol staff members in support of its argument. Defendant also attaches several items of correspondence sent by Defendant to Bristol regarding the policy.

**A. Safe Harbor**

The federal regulations enacting ERISA provide for a "safe harbor" for certain types of insurance programs. Those programs falling within the safe-harbor exemption need not conform to ERISA. To qualify for the safe-harbor designation, a plan must be designed such that:

> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation in the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j).

The first prong of the safe-harbor analysis is hotly contested. Plaintiff insists that since he

was personally responsible for the premiums, Bristol acted only as a "conduit" when it submitted payments. Defendant maintains that Bristol's actions amounted to interest-free loans to Plaintiff with no required payment schemes or dates, and that these "loans" equate to contributions to the plan. *See Spillane v. AXA Fin., Inc.*, 648 F. Supp. 2d 690, 699 (E.D. Pa. 2009); *Stone v. Disability Mgmt. Servs., Inc.*, 288 F. Supp. 2d 684 (M.D. Pa. 2003).

The fact that Bristol submitted the premiums does not, by itself, require a finding that an ERISA plan exists. *See New England Mut. Life Ins. Co., Inc. v. Baig*, 166 F.3d 1, 5 n.5 (1st Cir. 1999). If Bristol's involvement was limited to simply submitting premiums, the safe-harbor requirement would be satisfied. *See Ames v. Jefferson Pilot Fin.* Co., 515 F. Supp. 2d 1050, 1055 (D. Ariz. 2007) (employer collected premiums and forwarded a single check); *Schwartz v. Provident Life & Accident Ins. Co.*, 280 F. Supp. 2d 937, 941 (D. Ariz. 2003) (employer charged premium costs to employees as taxable income); *B-T Dissolution, Inc. v. Provident Life & Accident Ins. Co.*, 175 F. Supp. 2d 978, 983 (S.D. Ohio 2001) (full amount of premiums included on employee's W-2 income-tax form); *Jones v. Pioneer Life Ins. Co. of Ill.*, 858 F. Supp. 164, 165 (M.D. Ala. 1994) (employer reimbursed in full each month).

In his deposition, Plaintiff represented that he would "take a distribution" and pay taxes on the premium amounts as a method of reimbursement to Bristol. Plaintiff has, however, offered no documentary evidence confirming this practice. Plaintiff's 2003 tax return (*i.e.*, the year before Plaintiff's automobile accident) does not explicitly reference the insurance premiums. *See Spillane*, 648 F. Supp. 2d at 699 (no documentation to support the plaintiff's assertion that he paid income taxes on premium amounts); *Cowart v. Metro. Life Ins. Co.*, 444 F. Supp. 2d 1282, 1290–91 (M.D. Ga. 2006) (only evidence of tax payments was the plaintiff's affidavit). Moreover, Plaintiff admitted

that he would defer payments if he was not "doing well" financially and "put it off . . . to the next accounting year."  Pl.'s Dep. at 21.   Such a statement suggests that this situation is more akin to those cases construing the premium payments to be an interest-free loan, as it appears that Plaintiff could reimburse the company at his convenience.  *See, e.g.*, *Stone*, 288 F. Supp. 2d at 692 ("The shareholders were free to pay back that money at their leisure.").

The Court finds that these disputed facts preclude a determination whether Bristol "contributed" to the plan insofar as the safe-harbor provision is concerned.  Because all four factors must be met for the policy to qualify for the safe-harbor exception, *see, e.g.*, *Thompson*, 95 F.3d at 435, the Court need not continue the analysis.  The Court will instead proceed with the remaining *Thompson* factors.

## B.  Existence of Plan

This prong is not explicitly debated, primarily because the requisite factors are easily ascertained: (1) the benefits are identified (disability benefits for Plaintiff); (2) the beneficiary is known (Plaintiff); (3) the financing has been described (automatic deductions from Bristol's account to be repaid by Plaintiff); and (4) the procedures for receiving benefits are delineated in the policy.  *See Pemberton v. Reliance Standard Life Ins. Co.*, No. 08-86-JBC, 2008 WL 4498811, at *6 (E.D. Ky. Sept. 30, 2008) (finding ERISA plan on similar facts).  Therefore, the Court finds that the second *Thompson* factor is met.

## C.  Established or Maintained

The final *Thompson* factor requires the Court to determine whether the employer "established or maintained" the plan with the intent to provide its employees with benefits.

"Under *Thompson*, when an employer determines which employees will be eligible for

coverage, negotiates the terms or benefits of the policy, is named as the plan administrator, and provides a summary plan description describing the plan as an ERISA plan, the plan is governed by ERISA." *Nicholas v. Standard Ins. Co.*, 48 Fed. Appx. 557, 564 (6th Cir. 2002) (finding ERISA plan based on the preceding factors).

There is no evidence on the record that any of the above factors are present in this case. Instead, the undisputed facts show that the actions taken by Bristol's employees amounted to: (1) ensuring that the direct-deposit system was functioning properly; (2) updating Plaintiff's personal information; and (3) tracking Plaintiff's arrearage to the company for the premiums. The Court finds that these tasks do not amount to "establishing or maintaining" an ERISA plan as a matter of law. *See Bailey v. Minn. Life Ins. Co.*, No. 07-196-JBC, 2009 WL 803701, at *7 (E.D. Ky. 2009) ("Nestle was not nearly so active, going only so far as to make the insurance available and assisting with enrollment and the transfer of documents between its employees and the defendant."); *see also B-T Dissolution*, 101 F. Supp. 2d at 948; *Schwartz*, 280 F. Supp. 2d at 944.

Moreover, Defendant's cited cases finding ERISA preemption under similar circumstances involved either a higher level of employer involvement or a greater number of participating employees than is present here. *See Spillane*, 648 F. Supp. 2d at 697 (plaintiff and co-owner contemporaneously applied for a disability-insurance policy for the benefit of the company and received discounts for purchasing together); *Pittinos v. Provident Life & Accident Ins. Co.*, No. CA 08–662-KDC, 2009 WL 424317, at *7 (S.D. Ala. Feb. 17, 2009) (employer established plan for employees); *Acuna v. Conn. Gen. Life. Ins. Co.*, 572 F. Supp. 2d 713, 726 (E.D. Tex. 2008) (employer paid premiums and provided bookkeeping functions for six physicians); *Crooms v. Provident Life & Accident Ins. Co.*, 484 F. Supp. 2d 1286, 1291–92 (N.D. Ga. 2007) (subsequent

insurance agreements covered additional employees).

This court recently held that ERISA did not preempt state-law claims when there was "no evidence that [the plaintiff] pursued this benefit in his capacity as President of [the employer] for himself as an employee." *Roberts v. Principal Life Ins.*, No. 07-11936, 2009 WL 691872, at *5 (E.D. Mich. Mar. 12, 2009). Likewise, the Court concludes that Plaintiff individually sought out the insurance policy, and he arranged the payments and bookkeeping through Bristol as a matter of personal convenience. That is, Plaintiff brought the policy to Bristol, rather than Bristol advocating the policy to Plaintiff. Therefore, Defendant has not shown that Bristol intended to establish or maintain an ERISA plan.

## V. CONCLUSION

Accordingly, and for the above reasons, IT IS HEREBY ORDERED that Plaintiff's state-law claims are not preempted by ERISA. The Court, however, retains jurisdiction of this matter based on its diversity jurisdiction as pleaded by Defendant in its notice of removal.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: January 13, 2010

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on January 13, 2010.

S/Marie E. Verlinde

Case Manager
(810) 984-3290